**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **KELLY TIGERT,** )<br>)<br>     **Plaintiff** )<br>)<br>vs. )<br>)<br>**J. JONES, et al.,** )<br>)<br>     **Defendants** ) | Case No. CIV-07-791-M |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, brings this suit under 42 U.S.C. § 1983 alleging a violation of his constitutional rights. Pursuant to an order entered by United States District Judge Vicki Miles LaGrange, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Defendants have filed a motion to dismiss/motion for summary judgment. Plaintiff has responded to the motion, and thus the matter is at issue. For the reasons set forth herein, it is recommended that Plaintiff's official-capacity claims be dismissed without prejudice on grounds of Eleventh Amendment immunity, and that Plaintiff's remaining claims be dismissed because the undisputed facts show that he has failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e.

Plaintiff is an inmate in the custody of the Oklahoma Department of Corrections (ODOC) currently housed at the Jim E. Hamilton Correctional Center in Hodgen, Oklahoma. However, at all times relevant to the claims raised herein, he was housed at the James

Crabtree Correctional Center (JCCC) in Helena, Oklahoma. His complaint herein stems from an incident which occurred when he was transferred to JCCC from the Howard McLeod Correctional Center. After receiving a "Class X" misconduct offense at Howard McLeod, Plaintiff was required to send home any property no longer permitted due to the resultant decrease in his classification level. "Petition 42 U.S.C. § 1983," Ex. A-1, p. 2.[1] However, for some reason, Plaintiff's television – one type of impermissible property – was transferred with him to JCCC. Id. When this was discovered, he was told he would have to send the television home or it would be destroyed as contraband. This dispute over the television ultimately led to this litigation, as will be discussed in more detail below.

In his four-count complaint, Plaintiff names the following Defendants: Justin Jones, Director, Oklahoma Department of Corrections; Debbie Morton, ODOC Director's Designee; David Parker, Warden, JCCC; Brandy Page, Case Manager, JCCC. In Count One, Plaintiff alleges that Defendants Jones, Morton, Parker and Page violated his rights by arbitrarily applying ODOC policies in a dissimilar fashion, depriving him of a liberty interest, the ability to earn credits, and appropriate level pay. Complaint, p. 3-3A. In Count Two, Plaintiff alleges that Defendants Parker, Morton, and Page violated his rights through a continuing campaign of harassment intended to coerce and intimidate him from further pursuit and redress of his grievances by (1) treating him in a dissimilar manner from

---

[1] This initial "Petition" was found by the undersigned to be insufficient, so Plaintiff was directed to re-file utilizing the Court's form complaint. However, rather than striking his initial filing, it was construed as a brief in support of the complaint. [Doc. No. 11].

similarly-situated inmates; (2) threatening him with punishment if he would not sign a monetary disbursement; (3) ordering "do not resubmit" on a grievance; and (4) denying him a fair hearing in State district court by submitting perjured statements by Defendants Morton and Parker. Complaint, p. 3A. Third, he claims that Defendants Jones, Morton, Parker and Page conspired against him. Complaint, p. 4. Fourth, he contends that the Defendants retaliated against him by filing a job-related misconduct report resulting in loss of his prison job. Complaint, p. 3B.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only where the pleadings and any supporting documentary materials "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party. Calhoun v. Gaines, 982 F.2d 1470, 1472 (10th Cir. 1992); Manders v. Oklahoma, 875 F.2d 263, 264 (10th Cir. 1989). A dispute is "genuine," when viewed in this light, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts that might affect the outcome of the suit under the governing law." Id.

To obtain summary judgment, the moving party need not affirmatively negate the nonmovant's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Rather, the

moving party initially bears the burden only of " 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id., at 325. Once the moving party has satisfied this burden, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact. Id. at 324. The nonmoving party "may not rest upon mere allegation" in his pleading to satisfy this requirement. Anderson, 477 U.S. at 256. Rather, Fed. R. Civ. P. 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. When an affirmative defense is raised in a motion for summary judgment, as is the case here with Defendants' claim that Plaintiff has failed to exhaust his administrative remedies, the defendant must demonstrate that "no disputed material fact exists regarding the affirmative defense asserted." Hutchinson v. Pfeil, 105 F.3d 562, 564 (10th Cir. 1997). "If the defendant meets this initial burden, the plaintiff must then demonstrate with specificity the existence of a disputed material fact." Id. "If the plaintiff fails to make such a showing, the affirmative defense bars his claim, and the defendant is then entitled to summary judgment as a matter of law." Id.

**III. UNDISPUTED FACTS**

Based upon the special report, the complaint, and the evidentiary material appended to the various motions and responses filed herein, the following material facts are

uncontroverted, deemed admitted, or, where disputed, viewed in the light most favorable to Plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

To exhaust administrative grievances pursuant to the Oklahoma Department of Corrections' policy, an inmate is required to submit in writing for each claim: (1) a request to staff; (2) a grievance to the facility head; and (3) an appeal to the administrative review authority of the facility head's response to the grievance. Defendants' Motion, Ex. 1, Inmate/Offender Grievance Policy, OP-090124, (IV),(V), (VI), (VII).

On March 29, 2006, six days after Plaintiff's arrival at JCCC, he submitted a request to staff to "C. of Security Denton" asking the prison to either allow him to store his television for 24 months, or allow him to sign a disbursement against future prison wages so that it could be sent home. Special Report, Att. 4, p. 1. On April 3, 2006, Plaintiff received the response that the television would be handled according to policy. Id. Prior to receiving that response, Plaintiff had submitted another request to staff to "Lt Hodgson" on March 31, 2006, asking for the same relief as that in the first request to staff. "Petition," Ex. A-1, p. 12. On April 3, 2006, he received a response noting the response of even date to the earlier request to staff and also indicating that policy would be followed. Id. On April 11, 2006, Plaintiff filed a request to staff to Defendant Warden Parker, asking that the storage time for his television be extended "until this matter can be legally resolved." Id. at p. 13. He also filed an emergency grievance with Defendant Parker on April 5, 2006, and Defendant Warden Parker responded on April 21, 2006, stating that he would allow Plaintiff to store his

5

television at JCCC for six months and on December 1, 2006, it would be destroyed as contraband if it had not been sent home. Id. at p. 14, 15. Plaintiff appealed on April 24, 2006, noting "probable error." Id. at 14. On May 8, 2006, Plaintiff also filed a grievance, sending it directly to Director's Designee Morton rather than the facility warden as instructed by the grievance form. Special Report, Att. 4, p. 3. On May 11, 2006, the grievance was returned unanswered, with a letter indicating that there was no facility head response, and that this was the "second incorrect attempt at filing this issue." Id. at p. 5. Plaintiff was cautioned that further abuse of the grievance process could result in restrictions. Id.

On July 10, 2006, Plaintiff filed a request to staff to Lt. Hodgson asking him to explain why some Class X misconduct inmates are required to send televisions home, and others are not. Special Report, Att. 5, p. 5. The response was that the only inmates allowed to keep their televisions were ones allowed by a former deputy warden. Id. Plaintiff then filed a second request to staff with Defendant Parker repeating the same question, and adding that he was requesting an extension of storage until he transferred from JCCC. Id. at p. 4. Defendant Parker responded on August 7, 2006, that "upon review of this situation...the fact that HMCC did forward your television does not negate the fact that policy does require you to send your television home." He then gave Plaintiff thirty days to have the television sent home. Id. at p. 6. Plaintiff then submitted a grievance to Defendant Parker on August 14, 2006. Id. at p. 2. On August 15, 2006, his grievance was returned by the warden's assistant, noting that Plaintiff had previously submitted a grievance on the same subject, and warning

6

him that repeated submission about issues previously addressed could result in grievance restriction. Id. at p. 1.

However, Plaintiff had already submitted a request to staff to "Director" on August 7, 2006, also complaining that some inmates with Class X offenses arrived at JCCC with televisions and were allowed to store them. Special Report, Att. 6, p. 2. On August 16, 2006, Defendant Morton responded, returning the correspondence unanswered, noting that it was duplicative of three other requests, and in disregard of instructions previously provided by the Director's office. Id. at p. 1. She placed Plaintiff on grievance restriction from August 16, 2006 to August 15, 2007. Id. She also warned him that further abuses would be grounds for additional restriction. Id. While on grievance restriction, ODOC policy requires inmates to, among other things, include an affidavit with every grievance containing "a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the inmate/offender within the last 12 months." Defendants' Motion, Ex. 1, p. 15 (IX.B.2.a).

Plaintiff then filed a lawsuit in the Oklahoma County District Court alleging that prison officials had violated his rights with regard to the television, and that lawsuit was terminated in favor of the Defendant Oklahoma Department of Corrections on January 22, 2007. Defendants' Motion, Ex. 2 (Journal Entry of Judgment, Case No. CJ-2006-7881). The state district court found that Plaintiff had not exhausted his administrative remedies with regard to the television issue; that his placement on grievance restriction did not limit his

ability to file grievances or violate his right to due process; that Plaintiff had an adequate post-deprivation remedy for loss of the television and/or had no property right to it as prison rules prohibited his possession of it, resulting in no due process violation; that any different treatment between Class X offenders with regard to televisions was not a violation of equal protection in the absence of membership in a protected class or violation of a fundamental right; and, that Plaintiff agreed verbally and in writing to send the television home in accordance with policy. Defendants' Motion, Ex. 2, p. 1,2,3. Plaintiff appealed, and the Oklahoma Court of Civil Appeals affirmed on December 17, 2007. Defendants' Motion, Ex. 3; Oklahoma State Courts Network, Docket for Case No. 104309, Oklahoma Court of Civil Appeals.

On March 22, 2007, Plaintiff was terminated from his prison job at the "Bridge" project after correctional counselor Chris Winters completed an incident report indicating that Plaintiff had failed to sign in for work. Special Report, Att. 2, p. 1. Winters also completed an offense report charging Plaintiff with a misconduct offense for failure to attend his work assignment. Special Report, Att. 2, p. 2. Plaintiff pleaded guilty to the offense misconduct prior to a hearing, and received a $5.00 fine. Special Report, Att. 2, p. 2-3. According to ODOC policy, inmates do not receive earned credits when they have been removed from a job assignment due to nonperformance until they are assigned to another job. Special Report, Att. 3, p. 1.

In March 2007, Plaintiff submitted a request to staff, and then a grievance, regarding the facility's refusal to allow him to sign a disbursement for the cost of postage in order to mail some legal documents. Special Report, Att. 7, p. 1-6. With his attempted grievance appeal, Plaintiff included an affidavit stating that "I am unable to provide your office with a list of any previous grievances submitted by me within the last 12 months...." Id. at p. 7. Plaintiff appealed the facility head's response, but Defendant Morton returned the appeal because Plaintiff was on grievance restriction and failed to include the proper documentation, plus he included attachments which were not permitted. Id. at p. 8.

On May 14, 2007, Plaintiff filed a grievance with Defendant Director's Designee Morton, complaining that his job termination was in retaliation for his filing of the lawsuit regarding the television and also requesting a promotion in classification level for his volunteer jobs at the prison. Special Report, Att. 8, p. 1-2. Plaintiff again included an affidavit stating that a "list of grievances filed during the last 12 months is not available. I am not required by any policy ops, rules, etc. to keep any records of any kind especially in 'anticipation' of their need at some imaginary time in the future." Id. at p. 3. He continues in the affidavit: "If these records are of such importance in regard to the current issue I'm sure DOC has copies available for your perusal." Id. Defendant Morton responded, returning Plaintiff's grievance unanswered because he did not include proper documentation for an inmate on grievance restriction; there was no attached request to staff; and there was

9

no response to the grievance from the facility head. Id. at p. 4. She also extended his grievance restriction from August 17, 2007 to May 23, 2008. Id.

In July 2007, Plaintiff initiated a request to staff claiming that he had been charged for three extra photocopies. Special Report, Att. 9, p. 1. Plaintiff then filed a grievance for the incident, alleging theft in retaliation for exercising his First Amendment rights (in the form of the staff charging him for three extra copies when he submitted a copy request that included three pages that had material on both the front and back of the page). Id. at p. 3-4. Plaintiff appealed Defendant Parker's response to the grievance, including again an affidavit stating that "a list of grievances filed during the last 12 months is unavailable, although your office has access to them." Id. at p. 7. Defendant Morton responded, returning the grievance for Plaintiff's failure to include proper documentation. Id. at p. 8. She also extended his grievance restriction period again, from May 23, 2008, to July 31, 2008. Id.

In July of 2007, Plaintiff filed a request to staff asking for the ODOC policy numbers allowing for the denial of classification level promotions to inmates working in volunteer as opposed to paying jobs. Special Report, Att. 10, p. 1. After receiving a response indicating that the policies in question made promotion discretionary in the event of volunteer jobs, Plaintiff filed a grievance, and when unsuccessful, an appeal. Id. at 3-6. He again included an affidavit indicating that a list a grievances filed over the last 12 months was unavailable. Id. at p. 7. Defendant Morton returned the grievance for Plaintiff's failure to include proper documentation. Id. at p. 8.

## IV. DISCUSSION

Defendants Jones, Morton, Parker, and Page have moved for dismissal/ summary judgment on several grounds. As noted above, two of those grounds are dispositive: first, that Plaintiff's monetary relief claims against them in their official capacity are barred on grounds of Eleventh Amendment immunity; and second, the undisputed facts show that Plaintiff has failed to exhaust his administrative remedies for any of the claims raised herein.

### A. ELEVENTH AMENDMENT IMMUNITY

Defendants seek dismissal of Plaintiff's official capacity claims for monetary damages brought pursuant to 42 U.S.C. § 1983 on the ground that those claims are barred by the Eleventh Amendment. Defendants move for dismissal of "the DOC Defendants," and so the undersigned construes the request for dismissal to be raised on behalf of all the Defendants to the extent they are being sued in their official capacities.

The Eleventh Amendment provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State. . . ." U.S. Const. amend. XI. This Amendment precludes not only actions in which the state is directly named as a party, but also actions brought against a state agency or state officer where the action is essentially one for recovery of money from the state treasury. Edelman v. Jordan, 415 U.S. 651, 677 (1974) (barring any "retroactive award which requires the payment of funds from the state treasury"

11

and limiting the federal courts to providing only "prospective injunctive relief" against state officials sued in their official capacity).

The State of Oklahoma has not waived the defense of sovereign immunity as to claims brought pursuant to § 1983. Callahan v. Poppell, 471 F.3d 1155, 1158-1159 (10th Cir. 2006). Therefore, Plaintiff's § 1983 claims for monetary damages against Defendants in their official capacities are barred by the Eleventh Amendment. It is therefore recommended that any such claims be dismissed without prejudice.

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants have also raised the affirmative defense of Plaintiff's failure to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a), and as noted, have attached materials outside the pleadings in support of the defense. Jones v. Bock, 127 S.Ct. 910, 921 (2007) ("[ F]ailure to exhaust is an affirmative defense under the PLRA . . . ."). Therefore, with respect to the issue of exhaustion of administrative remedies, Defendants' motion to dismiss/motion for summary judgment has been treated as a motion for summary judgment. See Fed. R. Civ. P. 56.

Pursuant to the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a mandatory exhaustion requirement exists for inmates challenging prison conditions in federal court:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). A prisoner properly exhausts administrative remedies by completing the administrative review process as defined by the prison grievance system. Jones, 127 S.Ct. at 922. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones, 127 S.Ct. at 923. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). Moreover, "[t]o exhaust administrative remedies an inmate must properly comply with grievance procedures; substantial compliance is insufficient." Fields v. Oklahoma State Penitentiary, 511 F.3d 1109, 1112 (10th Cir. 2007).

ODOC's grievance procedure requires that an inmate make an initial attempt to resolve the complaint by talking with a case manager, probation or parole officer, supervising employee or other staff within three days of the incident. See Defendants' Motion, Ex. 1 (Inmate/Offender Grievance Process, OP- 090124 (IV)(A)). The inmate must then submit a Request to Staff to the unit manager stating the problem to be addressed and the Request to Staff must be submitted within seven days of the incident. See id., OP-090124( IV)(B). The next step in the grievance procedure requires an inmate to submit to the reviewing authority a formal grievance using the "Inmate/Offender Grievance Report Form" along with the Request to Staff form and the response. See id., OP-090124(V)(A). If the inmate

13

does not follow the instructions for submitting a grievance, the grievance may be returned unanswered for proper completion and, if allowed, the inmate must properly resubmit the grievance within ten calendar days of receipt. See id., OP-090124(V)(A)(7). The final step in the grievance procedure requires the inmate to appeal the reviewing authority's response to the administrative review authority. See id., OP-090124(VII)( B) and (D).

Due to Plaintiff's placement on grievance restriction, additional requirements govern the submission of grievances by Plaintiff after August 16, 2006. See Special Report, Att. 6, p. 1. Under ODOC policy, all grievances submitted during a restriction period must be accompanied by a showing of cause as to why the inmate should be permitted to grieve. See, Defendants' Motion, Ex. 1 (Inmate/Offender Grievance Process, OP-090124 (IX)(B)). The grievance must also be accompanied by a duly verified affidavit:

> The inmate/offender will submit a duly verified affidavit, made under penalty of discipline for lying to staff, attached to the grievance stating that all contents of the grievance are true and correct to the best of the inmate's /offender's knowledge and belief. The affidavit will also contain a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the inmate/offender within the last 12 months.

Id., OP-090124(IX)(B)(2)(a). The grievance procedure further provides that if a grievance is returned on grounds that compliance with the requirements has not been met, "[t]he grievance may proceed when the inmate/offender meets the guidelines outlined in this section." Id., OP- 090124(IX)(B)(2)(c)-(d).

Defendants move for summary judgment, relying upon the Special Report which includes copies of the grievances submitted by Plaintiff and pertaining to the claims raised

in this Complaint. As a whole, these administrative materials clearly show that Plaintiff has not properly exhausted administrative remedies as to any of the claims raised in the Complaint.

In objecting to Defendants' exhaustion defense, Plaintiff claims that he has "no control" as to how or even if the Defendants choose to address grievances. Plaintiff's Response, p. 11. He claims that Defendant Morton's failure to address his grievances for his failure "to compile, maintain, and store year old records in premptory (sic) anticipation of the possibility of prisoner being placed on grievance restriction at some imaginary time in the future" is improper and a violation of due process. Id. He further claims that Defendant Morton's failure to address his grievances on such administrative grounds rendered his remedies "unavailable." Id. at 12. He also claims that he was denied a copy of the inmate grievance log when he requested the information. Id. at 12, and Ex. E. He claims that he provided enough information for the prison to investigate his grievances, but they chose not to do so. Id. at 13.

Thus, Plaintiff provides no explanation regarding the procedural defects reflected in his administrative materials, and the steps he took (other than asking *the prison* to provide *him* the very information that its grievance restriction policy required *him* to provide *the prison*,) to cure those defects. See Fields, 511 F.3d at 1112-1113 (stating that the court has no obligation to examine each of the ODOC's grievance denials "to see whether each grievance was in fact flawed"). Instead, Plaintiff ignores the procedural defects up until the

15

time of his placement on grievance restriction, and then contends that his placement on grievance restriction rendered administrative remedies unavailable to him.  Plaintiff argues regarding the appropriateness of the prison administration's interpretation of its policy, but does not dispute the fact that he failed to comply with that policy as interpreted. The undersigned finds, as the record demonstrates, that Plaintiff has failed to adhere to the requirements of the ODOC's grievance restriction process, not that Defendants have acted to prevent him from satisfying those requirements.

The undersigned notes Plaintiff's claim that he was dismissed from his job in retaliation for his pursuit of legal action against ODOC regarding the television, and that this claim might under some circumstances have been exhausted via the misconduct appeal process.  However, Plaintiff elected to plead guilty to the misconduct offense stemming from his termination and did not even request a hearing, much less an appeal. [2] Thus, even if a misconduct appeal had been sufficient to exhaust some of the issues raised herein, see, e.g., Martin v. Butler, No. 01-7001, 10 Fed. Appx. 773 (10th Cir. May 31, 2001) (appeal of misconduct conviction did not satisfy exhaustion requirement as to conspiracy claim which would have needed to be brought separately as part of prison grievance process); West v. Kolar, No. 03-6265, 108 Fed. Appx. 568, 570 (10th Cir. Aug. 17, 2004) (where counts in section 1983 complaint "concerned much broader issues than those involved in the

---

[2]Under ODOC policy, the procedures governing appeals of misconduct convictions are separate and distinct from procedures governing the grievance process. See Defendants' Motion, Ex. 1, (OP- 090124(II)(B)(1)).

misconduct proceedings" those counts "should have been exhausted through the [prison] grievance process rather than as part of the misconduct appeal")[3], there was no disciplinary appeal in this case to serve as the exhaustion requirement.

Because Plaintiff has failed to demonstrate with specificity the existence of a genuine issue of material fact with regard to this issue, Defendants are entitled to summary judgment on their affirmative defense that Plaintiff has failed to exhaust his administrative remedies. Although Plaintiff has attempted to raise issues going to the merits of his claims, his failure to exhaust his administrative remedies renders such disputes immaterial.

## **RECOMMENDATION**

For the reasons set forth above, it is recommended that the motion to dismiss/motion for summary judgment of Defendants Jones, Morton, Parker, and Page [Doc. No. 21] be granted, that all of Plaintiff's claims for monetary relief against these Defendants in their official capacities be dismissed without prejudice based upon Eleventh Amendment immunity, and that all of Plaintiff's remaining claims be dismissed without prejudice for his failure to exhaust his administrative remedies. The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 3, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. The parties are further advised that failure to make timely objection to this Report and Recommendation waives

---

[3]These unpublished dispositions are cited for persuasive value pursuant to 10th Cir. Rule 32.1.

their right to appellate review of both factual and legal questions contained herein.  <u>Moore v. United States</u>, 950 F.2d 656 (10th Cir. 1991).  This Report and Recommendation disposes of all the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED this 13th day of June, 2008.**

_____
DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE